UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Marty W. Crandall,<br><br>               Plaintiff,<br><br>     v.<br><br>Teamsters Local No. 150, et al.,<br><br>               Defendants. | No. 2:23-cv-03043-KJM-CSK<br><br>ORDER |

Plaintiff Marty W. Crandall, a member of Teamsters Local 150 (the Union), brings this employment action against the Union and Dale Wentz, the Secretary-Treasurer of the Union. Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The court **grants** the motion in part and **denies** the motion in part.

**I.     BACKGROUND**

Crandall is a member of the Union. Compl. ¶ 7, ECF No. 1. Wentz is the principal officer, or Secretary-Treasurer of the Union. *Id.* ¶ 9. Unlike some other unions, Business Agents in the Teamsters Union are elected and not appointed by the principal officer. *Id.* ¶ 36. The Union holds elections every three years and voters can either vote for individual candidates or vote for "the slate" of nominated officers and Business Agents who run together with the Secretary-Treasurer. *Id.* ¶ 38. Crandall alleges the election system in the Union is "rigged to crush dissent and eradicate non-slate candidates." *Id.* ¶ 40. In particular, Crandall alleges control

of the slate enables the Secretary-Treasurer to essentially have control over the election outcome. *Id.* ¶ 42. Thus, "running as an independent Business Agent is hopeless and futile." *Id.* Specifically, the Union does not collect members' emails, rendering communication "obsolete," and the costs of communicating through mail and posting flyers on work sites are formidable for independent candidates. *Id.* ¶¶ 46–48.

For several consecutive terms, Crandall prevailed during elections and the Union employed Crandall as an elected Business Agent. *Id.* ¶ 7. In 2020, the Union re-elected plaintiff to a three-year term as a Business Agent and elected Wentz as Secretary-Treasurer. *Id.* ¶¶ 11, 13. While he was serving this most recent term, Crandall communicated concerns about another Business Agent, Perry Hogan, who allegedly had a "long-standing connection" and "long history of alliances" with Wentz. *See id.* ¶¶ 14–21. For example, Crandall reported Hogan rarely attended business meetings, shifted responsibilities to other Business Agents who then became "overworked and stressed," and essentially acted as a "ghost employee" who received all the benefits of employment without performing his duties. *See id.* Wentz allegedly did not take any disciplinary action, *id.* ¶ 21, and rebuffed Crandall's request to see Hogan's "weekly work calendar, credit card and gasoline statements" to determine whether Hogan was "avoiding his Business Agent responsibilities," *id.* ¶ 22.

About a month before the nomination/election meeting set for November 1, 2023, Wentz informed Crandall and another Business Agent, Kelli Pitpit, that he would not include them in the slate on which Wentz would run. *Id.* ¶¶ 25, 50. Wentz allegedly told Crandall he dropped them from the slate because "[w]e're moving in a different direction." *Id.* ¶ 25. Both Crandall and Pitpit are over the age of 60, and plaintiff alleges the two individuals who replaced them on the slate are substantially younger, as well as less qualified. *Id.* ¶¶ 27, 61, 69. Crandall alleges Wentz intentionally waited to drop Crandall from the nominating slate until a month before the election, to surprise him about his "forced elimination" and to deprive him of the "time to communicate with all of their members, rally support, build alliances, raise money, and devote the hours and hours of work needed to run a competitive independent campaign against an entrenched slate that spends Local funds to protect itself." *Id.* ¶ 50. Crandall also alleges Wentz

took adverse action against him because he had "reasonable cause to believe [plaintiff] would take corrective action against Hogan, i.e., be a whistleblower" and report Hogan's absences. *Id.* ¶ 76.

Crandall now brings this action against defendants and raises the following claims:

1) Violation of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA) against all defendants;

2) Violation of the California Fair Employment and Housing Act (FEHA) against Teamsters Local No. 150;

3) Violation of the Age Discrimination in Employment Act of 1967 (ADEA) against Teamsters Local No. 150;

4) Whistleblower Retaliation under California Labor Code[1] § 1102.5 *et. seq.* against all defendants; and

5) Wrongful Termination in Violation of Public Policy against Teamsters Local No. 150.

*See generally id.* Crandall seeks "compensatory damages, including but not limited to lost back pay, salary, bonus wages and forward pay, lost fringe benefits, and emotional distress; with legal interest," punitive damages, attorneys' fees and costs, pre-judgment and post-judgment interest, and further award and relief as the court "deems just and proper." *Id.* at 21 ("Prayer for Relief").[2] Defendants move to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). Mot., ECF No. 7. Plaintiff has filed a late opposition, Opp'n, ECF No. 10,[3] and defendants have replied, Reply, ECF No. 11.

The court held a hearing on this matter on March 29, 2024. *See* Mins. Mot. Hr'g, ECF No. 15. David Graulich appeared for plaintiff. *Id.* Robert Bonsall appeared for defendants. *Id.*

---

[1] The complaint incorrectly refers to California Government Code, instead of the California Labor Code. *See* Compl. at 19.

[2] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

[3] Although plaintiff's opposition is late, *see* Graulich Decl. ¶ 4, ECF No. 10-1; E.D. Cal. L.R. 230(b), the court nevertheless considers the late filing because defendants have had an opportunity to address plaintiff's arguments in their reply brief and during hearing and they will not be prejudiced if the court considered the opposition.

## II. SUBJECT MATTER JURISDICTION

Defendants first move to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. Mot. at 5; *see* Fed. R. Civ. P. 12(b)(1). They argue plaintiff's claims are preempted by Title IV of the LMRDA. *See* Mot. at 10–13. Because the threshold question a federal court must answer affirmatively in every case is whether it has jurisdiction, the court begins with this argument. *See* Fed. R. Civ. P. 12(h)(3).

To understand defendants' argument, a primer on the LMRDA is needed. "The LMRDA was the first major attempt of Congress to regulate the internal affairs of labor unions." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 530 (1972). "Title I of the Act provides a statutory 'Bill of Rights' for union members, including various protections for members involved in union elections, with enforcement and appropriate remedies available in district court." *Loc. No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 528 (1984). "Title IV, in contrast, provides an elaborate postelection procedure aimed solely at protecting union democracy through free and democratic elections, with primary responsibility for enforcement lodged with the Secretary of Labor." *Id.* While individuals may bring a suit to remedy violations of Title I, a suit by the Secretary of Labor is the exclusive post-election remedy for violations of Title IV. *Id.* at 538–40. Title IV "plainly bars" relief under Title I when a union member "challenges the validity of an election that has already been completed." *Id.* at 541. However, "the full panoply of Title I rights is available to individual union members 'prior to the conduct' of a union election." *Id.* Thus, to determine whether a Title I suit may be properly brought depends on the nature of relief sought. *Id.* at 543; *see also Casumpang v. Int'l Longshoreme's & Warehousemen's Union, Loc. 142*, 269 F.3d 1042, 1057 (9th Cir. 2001).

Defendants argue plaintiff's claims are preempted by Title IV because plaintiff is essentially challenging the validity of the Union's election and election process. *See* Mot. at 11; Reply at 3. In his opposition, plaintiff does not respond to the preemption argument. *See generally* Opp'n (discussing instead § 301 preemption, which is inapplicable here). At hearing,

4

1  plaintiff argued this case is mainly about the exercise of his free speech rights and not the
2  election.
3   Although plaintiff does not explicitly seek to set aside the Union election, plaintiff does
4  challenge the validity of the Union's election and election procedures by alleging improprieties in
5  the election system within the Union itself and by challenging his removal from the nominating
6  slate. *See, e.g.*, Compl. ¶¶ 40–48 (alleging election system is "rigged"). Moreover, he seeks "lost
7  back pay, salary, bonus wages and forward pay, [and] lost fringe benefits" for damages resulting
8  from being dropped from the nomination slate and not being re-elected. *Id.* at 21. The damages
9  he seeks effectively request the court find he was entitled to be re-elected, meaning he requests
10 the court vacate the election results, after the election has been completed. Such post-election
11 challenges to the validity of the Union's election and election procedures must be brought under
12 Title IV and the court does not have jurisdiction to grant plaintiff's requested relief. *See Calhoon*
13 *v. Harvey*, 379 U.S. 134, 140 (1964); *see also, e.g.*, *Bermingham v. Castro*, 191 F.3d 459 (9th Cir.
14 1999) (table decision) ("[T]he damages [union member] seeks for lost income and benefits
15 attributable to the business agent position effectively challenge the validity of the election already
16 conducted, which is an area in which Title IV provides the exclusive remedy and preempts Title
17 I."). To the extent plaintiff challenges the Union's election procedures and the election itself, the
18 court does not have jurisdiction. *See Trbovich*, 404 U.S. at 532 (noting Congress made suits by
19 the Secretary the exclusive post-election remedy in part to protect unions from "unnecessary
20 judicial interference with their elections").
21  However, reading the complaint in the light most favorable to plaintiff as the court must
22 do at this stage, to the extent plaintiff challenges his removal from the slate as a retaliatory action
23 for speaking out against another Business Agent, and not the Union's election or election
24 procedures, the court has jurisdiction to consider plaintiff's Title I claim. *See Casumpang*,
25 269 F.3d at 1056; *Crowley*, 467 U.S. at 541 n.16 ("The exclusivity provision of Title IV may not
26 bar post-election relief for Title I claims or other actions that do not directly challenge the validity
27 of an election already conducted."). The court also has jurisdiction to consider plaintiff's
28 discrimination claims and remaining state law claims. *See, e.g.*, *Bloom v. Gen. Truck Drivers,*

5

1   *Off., Food & Warehouse Union, Loc. 952*, 783 F.2d 1356, 1362 (9th Cir. 1986) (LMRDA does

2   not preempt state wrongful discharge claim); *cf. Rodriguez v. Int'l Bhd. of Firemen & Oilers*,

3   No. 96-1247, 1997 WL 327086, at *13 (D. Kan. May 30, 1997) (ADEA creates independent

4   statutory right). The court therefore considers whether plaintiff's Title I, ADEA and state law

5   claims can survive defendants' challenge based on Rule 12(b)(6).

6   **III.   FAILURE TO STATE A CLAIM**

7         As noted, defendants also move to dismiss plaintiff's complaint under Rule 12(b)(6) for

8   failure to state a claim upon which relief can be granted. Mot. at 13–18; *see* Fed. R. Civ. P.

9   12(b)(6). In response, the court begins by assuming the complaint's factual allegations are true,

10  but not its legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citation omitted).

11  The court construes all factual allegations "in the light most favorable to the nonmoving party."

12  *Steinle v. City of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (citation omitted). The

13  court then determines whether those factual allegations "plausibly give rise to an entitlement to

14  relief" under Rule 8. *Iqbal*, 556 U.S. at 679.

15        **A.   Violation of Title I of the LMRDA (Claim One)**

16  Plaintiff's first claim arises under the LMRDA. The complaint refers generally to

17  29 U.S.C. § 411 *et. seq*, without specifying which section or sections his claim arises under.

18  Compl. at 16. However, he does list LMRDA sections 101(a)(1), 101(a)(2) and 609.[4] *See*

19  Compl. ¶¶ 52–54. Viewing the complaint in the light most favorable to plaintiff, the court

20  construes the complaint to allege violations of all three sections. In their motion, defendants

21  address only whether plaintiff can state a claim under section 609. Mot. at 13–15. Plaintiff does

22  not address defendants' arguments in opposition; he does not mention section 609, or 608,[5] at all.

23  *See generally* Opp'n. Rather, plaintiff appears to only argue he can state a claim under LMRDA

24  sections 101(a)(1) and 101(a)(2), which arise under Title I. *See* Opp'n at 7–10. Accordingly, the

25  court deems plaintiff's claim under LMRDA section 609 abandoned, and dismisses it without

---

[4] Plaintiff erroneously cites to section 608, when in fact, he is quoting section 609. *See* Compl. ¶ 53.

[5] *See supra* note 4.

leave to amend. *See Calhoon v. City of S. Lake Tahoe*, No. 19-02165, 2020 WL 5982087, at *9 (E.D. Cal. Oct. 8, 2020) ("It is not for the court to litigate plaintiff's case[.]"); *see, e.g.*, *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (failure to address claim in opposition constitutes abandonment; collecting cases).

However, because defendants do not address whether plaintiff has stated a claim under LMRDA sections 101(a)(1) or 101(a)(2), the motion is **denied** as to the LMRDA claim. The court declines to review the sufficiency of plaintiff's allegations on its own initiative. *Cf. Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (court may note inadequacy of a complaint on its own initiative and dismiss a complaint after giving plaintiff notice and opportunity to respond).

**B.    Age Discrimination under the FEHA and ADEA (Claims Two and Three)**

Defendants argue plaintiff fails to state a claim for age discrimination under either the ADEA or FEHA because plaintiff was not discharged from his employment. Mot. at 15–16.

"The ADEA prohibits an employer from, among other things, 'discharging' an employee who is over forty years of age 'because of' the employee's age." *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (quoting 29 U.S.C. §§ 623(a)(1), 631(a)). The FEHA also "prohibits employers from discharging or dismissing employees over the age of forty based on their age." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017). Because of the similarity between ADEA and FEHA, when evaluating a claim under either statute, courts apply the same "three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination[.]" *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, "the plaintiff first bears the burden of establishing a prima facie case, which raises a presumption of discrimination." *Merrick*, 867 F.3d at 1145.

A plaintiff can establish a prima facie case of discrimination by showing:

> (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as

> termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

*Guz*, 24 Cal. 4th at 355; *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). Although the prima facie case under the Supreme Court's burden-shifting test is "not a pleading requirement," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), a complaint must allege a "'plausible' prima facie case of age discrimination," *Sheppard*, 694 F.3d at 1049–50.

Plaintiff alleges the Union discharged or otherwise terminated his employment when "Local 150 and Wentz dropped him from the nominating slate for Business Agents." Compl. ¶ 60; *see also id.* ¶¶ 62, 67–69, 84–85, 87. However, plaintiff does not allege the Union discharged him while he was serving his three-year term as a Business Agent. He also does not allege being on the nominating slate itself is a form of employment, such that his removal from the slate constituted termination of employment. Rather, he alleges Wentz decided not to run with plaintiff in the election and dropped him from the proposed slate of Business Agents. *See id.* ¶ 25. Plaintiff does not allege he was barred by the Union from running as an independent candidate; rather he alleges he could not effectively run as an independent candidate due to the systematic issues in the Union's election procedure. *See id.* ¶¶ 33, 40–50.

Even after viewing the complaint in the light most favorable to plaintiff, nothing in the complaint gives rise to a plausible inference that the Union discharged plaintiff or that plaintiff otherwise faced an adverse employment action. At most, plaintiff has alleged Wentz, the timing of Wentz's action in proposing the slate, and the Union's election procedures effectively prevented him from seeking reelection. In opposition to defendants' motion, plaintiff does not address how the allegations in the complaint give rise to a plausible prima facie case of age discrimination. He does not address defendants' arguments regarding the lack of adverse employment action, such as discharge or denial of a job; nor does he provide any arguments or point to authority suggesting circumstances in this case can amount to an adverse employment action prohibited by either or both the ADEA and FEHA. *See generally* Opp'n. To the extent he argues the Union's election was rigged or the election procedures were unlawful, plaintiff's exclusive remedy is under Title IV of the LMRDA, as explained above. Because plaintiff has not

alleged facts giving rise to a plausible prima facie case of age discrimination, defendants' motion as to the ADEA and FEHA claims is **granted**. Plaintiff may be able to state a viable claim under the ADEA and FEHA if he can allege he faced an adverse employment action. Thus, those claims are dismissed with leave to amend if possible, within the confines of Rule 11. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) ("A district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities.").

### C. Abandoned Claims (Claims Four and Five)

As to plaintiff's whistleblower retaliation and wrongful termination claims, the court finds plaintiff has abandoned those claims by not raising them in opposition to defendants' motion to dismiss. *Homsy v. Bank of Am., N.A.*, No. 13-01608, 2013 WL 2422781, at *5 (N.D. Cal. June 3, 2013) ("[W]here a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice."); *see also Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005). Plaintiff confirmed he has abandoned these claims during hearing. Defendant's motion is **granted** as to these claims.

Plaintiff's whistleblower retaliation and wrongful termination claims are dismissed without leave to amend.

### IV. CONCLUSION

For the reasons above, defendants' motion is **granted in part and denied in part**.

1) To the extent plaintiff challenges the validity of the Union's prior election and election procedures, the court does not have jurisdiction under Title IV of the LMRDA and **grants** the motion to dismiss in this respect.

2) Defendants' motion to dismiss claim one, violation of LMRDA sections 101(a)(1) and 101(a)(2), is **denied.** However, plaintiff's claim under LMRDA section 609 is deemed abandoned and is dismissed with prejudice and without leave to amend.

3) Defendants' motion to dismiss claims two and three, violation of the FEHA and ADEA is **granted with leave to amend.**

4) Defendants' motion to dismiss claims four and five, whistleblower retaliation and wrongful termination is **granted.**  Given plaintiff's abandonment of these claims they are dismissed with prejudice and without leave to amend.

5) Plaintiff may file an amended complaint within 21 days of the filing date of this order. If plaintiff does not file an amended complaint, the court will proceed with plaintiff's surviving LMRDA claim under sections 101(a)(1) and 101(a)(2).

This order resolves ECF No. 7.

IT IS SO ORDERED.

DATED:  August 19, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE